UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| IRON MOUNTAIN INFORMATION MANAGEMENT, INC., | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | CIVIL ACTION NO. 05-10999-RCL |
| SYSTRANS FREIGHT SYSTEMS, INC., | ) ) ) | |
| Defendant. | ) ) | |

## FIRST AMENDED COMPLAINT

Plaintiff Iron Mountain Information Management, Inc. ("Iron Mountain"), by its attorneys, Sullivan & Worcester LLP, as and for its first amended complaint against Defendant Systrans Freight Systems, Inc. ("Systrans"), alleges as follows:

### Nature of the Action

1. Systrans breached a written agreement, which requires that Systrans provide or procure courier services on Iron Mountain's behalf in certain markets. Among other things, Systrans failed to pay vendor invoices as required by the agreement. Systrans has also failed to repay Iron Mountain, as required by the agreement, certain monies that Iron Mountain has advanced to Systrans. Systrans has also refused to return, as requested by Iron Mountain pursuant to the agreement, certain of Iron Mountain's confidential and proprietary information. Iron Mountain seeks to recover damages and secure other relief resulting from Systrans' breaches.

{B0407794; 1}

**Parties**

2. Plaintiff Iron Mountain is a Delaware corporation with a principal place of business located at 1000 Campus Drive, Collegeville, Pennsylvania. Iron Mountain is a wholly-owned subsidiary of Iron Mountain Incorporated (NYSE: IRM).

3. Defendant Systrans is, upon information and belief, a Florida corporation with a principal place of business located at 571 West Lake Avenue, Suite 5, Bay Head, New Jersey.

**Jurisdiction and Venue**

4. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(a)(1) in that the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interests and costs, and is between citizens of different states.

5. Venue is proper in this district pursuant to 28 U.S.C. § 1391 in that a substantial part of the events or omissions giving rise to the dispute occurred in this judicial district.

**Background**

6. By written agreement dated May 1, 2003 (the "Contract"), Iron Mountain and Systrans agreed, among other things, that Systrans would furnish and deliver all of the manpower (possessing appropriate training, ability, knowledge, and expertise), materials and equipment to effectively provide courier and related services for Iron Mountain.

7. Prior to execution of the Contract, Systrans made a presentation to Iron Mountain executives regarding the courier and related services it could provide. This presentation occurred at Iron Mountain Incorporated's corporate headquarters at 745 Atlantic Avenue, Boston, Massachusetts. The Contract was negotiated, in part, in Boston, Massachusetts.

8. The Contract requires, among other things, that Systrans provide courier services within certain Iron Mountain markets and to certain facilities and sites in the continental United States. These services are to operate to, from, and between Iron Mountain customers and

facilities on a district-by-district basis as approved by Iron Mountain. Iron Mountain's Boston district is among the districts that Iron Mountain approved for provision of courier services by Systrans.

9. The Contract requires that Systrans provide certain management services related to the courier services that Systrans agreed to provide. Among other management services, the Contract requires that Systrans pay vendor invoices from courier companies that Systrans is using for performance of the Contract.

10. Systrans has not paid certain vendor invoices from courier companies that Systrans is using for performance of the Contract, despite Iron Mountain's having paid Systrans under the Contract sums intended to cover such invoices. Additionally, upon information and belief, a Systrans check to one vendor was returned by the bank due to insufficient funds.

11. By letter dated April 26, 2005, Iron Mountain notified Systrans that its failure to pay vendor invoices constituted a material breach of the Contract. The April 26th letter demanded that Systrans remedy any breaches of the Contract and provide Iron Mountain with adequate assurance that all outstanding vendor invoices related to performance of the Contract are paid and will continue to be paid on a timely basis. Systrans has since informed Iron Mountain that it will not provide the requested assurances and has therefore repudiated its obligations under the Contract.

12. Iron Mountain continues to be presented with unpaid invoices from vendors who refuse to deliver containers or records for Iron Mountain until their unpaid invoices are satisfied. Upon information and belief, the unpaid vendor invoices that Systrans has failed to pay currently total at least $389,000.

{B0407794; 1}

13. In conjunction with and upon execution of the Contract, Iron Mountain agreed to advance Systrans an initial amount of $105,000 (the "Initial Advance"). The Initial Advance was to be applied to startup expenses related to the Contract. Systrans agreed to repay the Initial Advance.

14. To secure the Initial Advance, Systrans granted Iron Mountain a security interest in the equipment purchased by Systrans at the inception of the Contract and agreed that, upon request, Systrans would execute the necessary UCC financing statement to perfect Iron Mountain's security interest.

15. By written agreement dated January 30, 2004 (the "First Amendment"), Iron Mountain agreed to advance an additional $50,000 (the "First Additional Advance") to Systrans. Iron Mountain provided the First Additional Advance to assist Systrans in expanding services to Iron Mountain. Systrans agreed to repay the First Additional Advance.

16. By written agreement dated January 19, 2005 (the "Second Amendment"), Iron Mountain agreed to advance an additional $40,500 (the "Second Additional Advance") to Systrans. Iron Mountain provided the Second Additional Advance to assist Systrans in improving its services to Iron Mountain. Systrans agreed to repay the Second Additional Advance with interest.

17. During the term of the Contract, Systrans overcharged Iron Mountain. As of January 19, 2005, Iron Mountain and Systrans agreed that the aggregate amount of the overcharges was in excess of $78,500 (the "Overcharges"). Systrans has failed to fully repay these overcharges or offset them from amounts invoiced to Iron Mountain.

18. Of the Initial Advance ($105,000), First Additional Advance ($50,000), Second Additional Advance ($40,500), and the Overcharges (more than $78,500), Systrans has repaid or

offset only approximately $108,000, leaving approximately $166,000 due and owing from Systrans to Iron Mountain on those advances and overcharges.

19. The Contract expressly acknowledges that Systrans will receive and maintain certain of Iron Mountain's confidential and proprietary information while performing the Contract. The confidential and proprietary information includes (i) Iron Mountain's customers' names, (ii) customer contact information (including name, address, phone numbers), (iii) charges for deliveries, and (iv) frequency of deliveries.

20. Iron Mountain takes great care to maintain and protect the confidentiality of its confidential and proprietary information.

21. The Contract restricts Systrans' disclosure of Iron Mountain's confidential and proprietary information except as necessary to perform the Contract.

22. Systrans has overtly threatened Iron Mountain that, if Iron Mountain does not pay the invoices from it to Iron Mountain for the weeks of April 30 and May 6, 2005 (which, in view of Systrans' failure to pay its vendors, Systrans had previously acknowledged and agreed that Iron Mountain would not have to pay), Systrans will sell Iron Mountain's confidential and proprietary information. Systrans has also threatened to begin sending demand letters to, and pursuing collection activities against, Iron Mountain's customers with respect to these invoices.

23. On May 17, 2005, Iron Mountain sent Systrans a letter explaining that Systrans' threats, if executed, would breach the Contract. Iron Mountain also demanded that "Systrans return all information that Iron Mountain has disclosed in written or tangible form, and that Systrans destroy all of its copies, excerpts or notes, and files (including, but not limited to, computer, tape, and paper), made by it that contain any portions of the information."

24. On May 17, 2005, Systrans, through its President, Mr. Neebling, responded by email to Iron Mountain's May 17th letter and did not retract Systrans' threats. In fact, Mr. Neebling stated, with regard to returning and destroying data and information, that "I will pursue the sale of our technology [which contains Iron Mountain's data] if we don't resolve this matter to minimize the financial downside."

25. On May 18, 2005, Systrans' counsel sent a letter to Iron Mountain, in part responding to Iron Mountain's May 17th letter, and stated that "<u>at this time</u> Systrans, either through Mr. Neebling or any other entity or individual, has no intention of breaching the confidentiality provisions of the Contract or contacting customers directly." (emphasis added). Nevertheless, the May 18th letter from Mr. Neebling's counsel did not state that Systrans would return Iron Mountain's confidential and proprietary information and Systrans has not, in fact, returned Iron Mountain's information as demanded.

### Count I:  Breach of Contract – (Failure to Pay Vendors)

26. Iron Mountain incorporates by reference herein the allegations in paragraphs 1 through and including 25 as if set forth herein.

27. Iron Mountain and Systrans, for good and valuable consideration, entered into the Contract. The Contract, as amended, reflects valid and binding legal obligations of Iron Mountain and Systrans, enforceable in accordance with their terms.

28. Systrans breached the Contract by, among other things, not paying vendor invoices from courier companies that Systrans is using for performance of the Contract.

29. Iron Mountain has fully performed its duties and obligations under the Contract.

30. As a direct and proximate result of Systrans' breaches, Iron Mountain has suffered damages.

### Count II:  Breach of Contract – (Failure to Pay Amounts Due and Owing)

31. Iron Mountain incorporates by reference herein the allegations in paragraphs 1 through and including 30 as if set forth herein.

32. Iron Mountain and Systrans, for good and valuable consideration, entered into the Contract.  The Contract, as amended, reflects valid and binding legal obligations of Iron Mountain and Systrans, enforceable in accordance with their terms.

33. Systrans has breached the Contract, as amended, by failing to repay the full amount of the Overcharges or offset them from amounts invoiced to Iron Mountain.

34. Systrans has also breached the Contract, as amended, by failing to fully repay the full amount of the Initial Advance, the First Additional Advance, and the Second Additional Advance or offset them from amounts invoiced to Iron Mountain.

35. Iron Mountain has fully performed its duties and obligations under the Contract.

36. As a direct and proximate result of Systrans' breaches, Iron Mountain has suffered damages.

### Count III:  Misappropriation – (Money Had and Received)

37. Iron Mountain incorporates by reference herein the allegations in paragraphs 1 through and including 36 as if set forth herein.

38. Iron Mountain has paid Systrans certain monies that Systrans had agreed and was bound to pay to courier companies making deliveries on Iron Mountain's behalf.

39. Contrary to its agreement, Systrans has not paid vendor invoices from these courier companies making deliveries on behalf of Iron Mountain.

40. Upon information and belief, Systrans has misappropriated certain of the monies that Iron Mountain paid to Systrans.

41. The monies that Iron Mountain paid to Systrans for payment to courier companies, which monies have in fact not been paid to those courier companies, should be returned to Iron Mountain.

**Count IV:  Conversion – (Iron Mountain's Confidential and Proprietary Information)**

42. Iron Mountain incorporates by reference herein the allegations in paragraphs 1 through and including 41 as if set forth herein.

43. Iron Mountain has a right to its confidential and proprietary information that is in Systrans' possession.

44. Systrans has intentionally and wrongfully exercised control and dominion over Iron Mountain's confidential and proprietary information that is in Systrans' possession.

45. Notwithstanding Iron Mountain's express demands, Systrans has failed to return Iron Mountain's confidential and proprietary information that is in Systrans' possession.

46. By reason of Systrans' continued and unauthorized retention of Iron Mountain's confidential and proprietary information, Iron Mountain is suffering damage and detriment.

**Count V:  Preliminary and Permanent Injunction (Threatened Tortious Interference with Iron Mountain's Customers)**

47. Iron Mountain incorporates by reference herein the allegations in paragraphs 1 through and including 46 as if set forth herein.

48. Iron Mountain has contractual and business relationships with customers and Systrans has arranged for transportation between Iron Mountain and certain of those customers.

49. Systrans has knowledge of the identity of these Iron Mountain customers since Systrans has arranged for deliveries between those customers and Iron Mountain.

50. Systrans has threatened, with an improper motive or means, to interfere with Iron Mountain's contractual and business relationship with its customers by making unwarranted demands for payments from those customers.

51. Systrans' threats, if executed, would likely irreparably damage the contractual and business relationships between Iron Mountain and its customers, and Iron Mountain has no adequate remedy at law.

### Count VI: Preliminary and Permanent Injunction (Threatened Disclosure of Iron Mountain's Confidential and Proprietary Information)

52. Iron Mountain incorporates by reference herein the allegations in paragraphs 1 through and including 51 as if set forth herein.

53. The Contract requires that Systrans maintain and protect any confidential and proprietary information that Iron Mountain provides to Systrans.

54. The Contract restricts Systrans' disclosure of Iron Mountain's confidential and proprietary information.

55. Systrans has threatened to disclose Iron Mountain's confidential and proprietary information in violation of the Contract.

56. Iron Mountain would be irreparably damaged if Systrans unjustifiably disclosed Iron Mountain's confidential and proprietary information, and Iron Mountain has no adequate remedy at law.

**WHEREFORE**, Iron Mountain respectfully requests that this Court:

A. Award Iron Mountain compensatory damages resulting from Systrans' breaches of the Contract;

B.	Order and direct Systrans to reimburse Iron Mountain for all monies paid that, by agreement, should have been paid by Systrans to courier companies making deliveries on Iron Mountain's behalf;

C.	Permanently enjoin Systrans, as well as its principals and agents and all others acting in concert with them who receive notice of the Court's order, from disclosing, selling, transferring or otherwise disposing of Iron Mountain's confidential and proprietary information in direct violation of a written agreement between Iron Mountain and Systrans;

D.	Permanently enjoin Systrans, as well as its principals and agents and all others acting in concert with them who receive notice of the Court's order, from contacting any Iron Mountain customers demanding payment for any deliveries that Systrans arranged pursuant to the Contract;

E.	Order and direct Systrans to provide Iron Mountain with a full, complete and detailed inventory or any and all confidential and proprietary information that is in Systrans' possession;

F.	Order and direct Systrans to return to Iron Mountain all information that Iron Mountain has disclosed in written or tangible form;

G.	Order and direct Systrans to destroy all of its copies, excerpts or notes, and files (including, but not limited to, computer, tape and paper), made by it that contain any portions of the information; and

H.   Award the Plaintiffs such further relief as the Court deems just, including without limitation reasonable attorneys' fees and disbursements.

**IRON MOUNTAIN INFORMATION MANAGEMENT, INC.**

By its attorneys,

May 20, 2005                     /s/ Samual A. Miller
                                 Ira K. Gross (BBO #212720)
                                 *igross@sandw.com*
                                 Samual A. Miller (BBO #648568)
                                 *smiller@sandw.com*
                                 SULLIVAN & WORCESTER LLP
                                 One Post Office Square
                                 Boston, Massachusetts  02109
                                 (617) 338-2800