UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IRON MOUNTAIN INFORMATION MANAGEMENT, INC., <br><br> Plaintiff, <br><br> v. <br><br> SYSTRANS FREIGHT SYSTEMS, INC., <br><br> Defendant. | ) <br> ) <br> ) <br> ) <br> ) <br> ) CIVIL ACTION <br> ) NO. 05 10999 RCL <br> ) <br> ) <br> ) <br> ) <br> ) |

**AFFIDAVIT OF GARRY B. WATZKE**

I, GARRY B. WATZKE, hereby depose and say under oath:

1. I am Senior Vice President and General Counsel of Iron Mountain Incorporated (NYSE:IRM), the parent corporation of Iron Mountain Management, Inc. I make this affidavit from facts within my personal knowledge and I believe all matters set forth herein to be true.

2. On May 17, 2005, I sent, by facsimile and UPS, a letter to James Neebling ("Neebling"), President of Systrans. A true and accurate copy of that May 17th letter (including its enclosure) is attached hereto as Exhibit A.

3. On that same day, Neebling responded, by email, to my May 17th letter. A true and accurate copy of Neebling's response email is attached hereto as Exhibit B.

4. On May 18, 2005, I received a letter from Read McCaffrey, Systrans's counsel. A true and accurate copy of that May 18th letter is attached hereto as Exhibit C.

Signed under the penalties of perjury this 20th day of May, 2005.

/s/ Garry B. Watzke
Garry B. Watzke

{B0407473; 1}

-2-

## CERTIFICATE OF SERVICE

I hereby certify that I have on this 20th day of May, 2005, served on counsel listed below, by email and FedEx, a true and correct copy of the foregoing **Affidavit of Garry B. Watzke**.

Read K. McCaffrey, Esq.
Patton Boggs LLP
2550 M Street, NW
Washington, DC  20037


/s/ Samual A. Miller_____
Samual A. Miller

# EXHIBITS TO
# AFFIDAVIT OF GARRY B. WATZKE

**EXHIBIT A**

CORPORATE OFFICES
745 ATLANTIC AVENUE
BOSTON, MASSACHUSETTS 02111
TELEPHONE: 617-535-4766
FAX: 617-451-0409



IRON MOUNTAIN®
The Leader in Records & Information Management

May 17, 2005

Mr. James Neebling
President
Systrans Freight Systems, Inc.
571 West Lake Avenue, Suite 5
Bay Head, NJ 08742

**By Facsimile and UPS**
**732-295-9980**

Re:   Contract for Logistics Management Services, Contract No. 2002111
      (the "Contract")

Dear Mr. Neebling:

I am writing with regard to the Contract and your May 13, 2005 email to Robert Miller, which email I have enclosed. I am sending this letter directly to you since our counsel, Sullivan & Worcester LLP, received notice yesterday that attorney Richard Anslow "will not be representing Systrans Freight Systems, Inc." If this is inaccurate or if Systrans has hired new counsel, please let us know immediately.

In your May 13th email, you threaten to liquidate Systrans and sell Systrans' technology "complete with the <u>data</u> to any party willing to pay for such." (emphasis in original). The Contract prohibits any such disclosure of Iron Mountain's confidential and proprietary information. Among other things, section III. B. of the Contract provides that:

> [Systrans] and [Iron Mountain] acknowledge that in the negotiation and performance of this Contract, confidential and proprietary information of each has been and will be made available to the other. **The parties agree to use reasonable efforts to maintain the confidentiality of such material and not to make any internal use of such material not required under this Contract. Neither party will disclose the information to any third party without prior written authorization from the disclosing party, and will not use the information received by it, except to those of its employees, agents and consultants whose duties justify the need for access to the information provided that such individuals are subject to obligations or secrecy and limited use commensurate in scope with this Contract.**
> (emphasis added).

Your threat, if executed, would be a direct violation of the Contract and Iron Mountain's rights under common law. We demand that you immediately inform us by writing whether you will be adhering to the requirements to maintain the confidentiality of Iron Mountain's information that is in your possession.

{B0406863; 1}

Mr. James Neebling
Page 2
May 17, 2005

We further demand, pursuant to the same section of the Contract quoted above, that Systrans return all information that Iron Mountain has disclosed in written or tangible form, and that Systrans destroy all of its copies, excerpts or notes, and files (including, but not limited to, computer, tape, and paper), made by it that contain any portions of the information. If we do not hear from you regarding these demands by close of business on Wednesday, May 18, 2005, we will assume that you plan to go forward with disclosing Iron Mountain's confidential and proprietary information and we will proceed accordingly.

Finally, we have reviewed the law regarding whether Systrans, as a transportation broker, is entitled to demand payment from any consignee for any courier or other vendor invoices that Systrans has failed to pay. We do not believe that your recitation of the law is accurate and will view any attempts to contact any Iron Mountain customers as an interference with Iron Mountain's business.

Naturally, Iron Mountain reserves and will take all measures necessary to protect all of its rights.

Sincerely,

Garry B. Watzke
Senior Vice President and General Counsel

## Watzke, Garry

**From:** Jim Neebling [jimneebling@systransfreight.com]
**Sent:** Friday, May 13, 2005 11:03 AM
**To:** bob.miller@ironmountain.com
**Cc:** rmccaffrey@pattonboggs.com; garry_watzke@ironmountain.com
**Subject:** Systrans

Bob

I don't know if we are still in a negotiation status base on Tom's attorney's email. I have clarified with Mr. McCaffrey that his settlement offer did include the numbers I proposed for Systrans. I will wait to hear from either you or Mr. McCaffrey on Monday afternoon.

Since the tone of our negotiations have been far from pleasant, I want your decision on the open invoices from the final 2 weeks of business. I see no good faith in your tone, threats, and don't appreciate your comments. I feel this is leading towards a full blown out legal battle. If we go that route, I will give you until Tuesday morning to decide if you are paying Systrans for the final 2 weeks (approx $ 49,000) if you decide not to remit payment immediately we will contact every consignee of each shipment via a demand letter for payment. (You can have your legal crew research transportation law which allows carriers to seek payment from any party in the transaction) I will give you the opportunity to keep this issue separate so as not to have additional impact on your customer relations.

If this does not get resolved on Monday, Tuesday morning I will engage Patton Boggs and join Tom's suit in order for the courts to resolve these issues. As you and others have stated "we are not worried about Carr" which is your opinion, however Read McCaffrey is committed to take this the entire way, and with my cooperation, notes from 67 meetings, dinners, and lunches for which 21 were for the business relationship, and 46 for the lawsuit. I'm sure my involvement will increase the chances of a fair settlement. I will also look to liquidate Systrans in order to pay the vendors, including selling the technology complete with the data to any party willing to pay for such.

You told me that this is not personal, but I take it very personal given the time and commitment I gave to your agenda. In the next 72 hours you and your associates have an opportunity to settle this for everyone. Given the pattern of this relationship, I don't have a lot of confidence that you will do so, but I wanted to give you one last chance to prevent another legal battle.


Jim Neebling
President
Systrans
Phone: 732-295-9914
Fax: 732-295-9980
Cell: 732-684-7868




Jim Neebling
President
NTS/Systrans
Phone: 732-295-9914
Fax: 732-295-9980


5/17/2005

**EXHIBIT B**

## Watzke, Garry

**From:** Jim Neebling [jimneebling@systransfreight.com]
**Sent:** Tuesday, May 17, 2005 3:33 PM
**To:** Watzke, Garry
**Cc:** rmccaffrey@pattonboggs.com
**Subject:** Your fax

Garry,

I never intended our relationship to turn out this way, and I don't think you did either. I tried to always keep the Carr issue out of our business relationship, but it was always entangled. I don't understand why Iron Mountain delayed getting back to Read McCaffrey relating to his letter about Tom Carr, then without a discussion or a meeting you fired the first shot. My relationship with Iron Mountain started because of Tom's potential business deal with you, and all during the legal case I stayed loyal and worked as a team. I have emails from March and April, requesting, and practically begging for help with the business volume. I advised that the situation was getting worse each week. When I had my meeting with Bob, I told him that the relationship was basically "done" because of the volume, the scenario with the Carr litigation, and saw no real way to move forward. As you know I told Bob what I would need to settle all my affairs including Tom. Bob responded "I don't care about Carr, this is what I can offer you or we can sue each other". He wanted to settle with Systrans and still require Carr to sign a release. Tom obviously said he would not.

I still provided Bob with a detailed guide with all rates, vendor contacts, and notes by district so you could achieve the "net rate" rather than the rate I was charging you.

I also offered him the technology as a condition of the deal. And now you have filed a suit against Systrans. My email to Bob was not a threat; it was the natural responsible reaction to attempt to collect fees for the last 2 weeks of service. If you read the email you will notice that I gave Bob the option to pay the 2 invoices and keep this issue separate. I also offered him the technology.

We have sorted the last 2 weeks of data by client and charges due for each delivery. I ask you; Will you pay these charges immediately so we will not pursue the clients? If you plan on paying these invoices please email me prior to noon tomorrow. As for returning and destroying data and information, I will pursue the sale of our technology if we don't resolve this matter to minimize the financial downside. You reference the contract in your fax, but never mention the promises made over 2 years to both Tom and I, with the final promise during the frantic call from Larry on the eve of the arbitrator's decision. Everyone at Iron Mountain suffers from "selective memory".

If you want to resolve all the issues between Tom, Systrans, and Iron Mountain, I encourage you to work with Read McCaffrey to come to an amicable settlement.

I have a meeting with Read McCaffrey at Patton Boggs at 10:30am tomorrow in Washington DC. and join Tom's action. I will not proceed with anything, or return of any information without Mr. McCaffrey approving. Any future correspondence should be directed to him with the exception of the payment for the last 2 weeks charges.

Jim Neebling
President
Systrans
Phone: 732-295-9914
Fax: 732-295-9980
Cell: 732-684-7868

5/18/2005

**EXHIBIT C**



2550 M Street, NW
Washington, DC 20037-1350
202 457-6000

Facsimile 202 457-6315
www.pattonboggs.com

May 18, 2005

Read K. McCaffrey
(202) 457-5243
rmccaffrey@pattonboggs.com

**VIA FACSIMILE**

Garry B. Watzke, Esq.
Vice President and General Counsel
Iron Mountain
745 Atlantic Avenue
Boston, Massachusetts 02111

Re: Iron Mountain/Systrans

Dear Mr. Watzke:

Patton Boggs will represent Systrans in the litigation filed by Iron Mountain (IM) in the United States District Court for the District of Massachusetts.

On May 2, 2005 you wrote to Systrans, c/o Mr. Neebling allegedly pursuant to a term or condition of the May 1, 2003 contract as between Systrans and IM clumsily attempted to terminate the contract by invoking the provisions of Section H.1.B. -- advising of a perceived breach for non-payment of "various carriers". Pursuant to the contract, you advised Systrans that it had thirty days to 'cure'. That of course would have taken us to June 1, 2005. However, in that same letter you advise that IM is making direct arrangements with many carriers for payment.

On or about May 10, 2005, as evidenced by several e-mails, your Mr. Miller advised Systrans, through Mr. Neebling, that as part of the settlement discussions, IM would be assuming the obligation of paying the vendors.

Following shortly thereafter, on May 13, 2005 you filed suit against Systrans for the very same alleged breaches you observed in your May 2, 2005 Section H.1.B 'notice' -- long before June 1, 2005 -- and apparently do not bother to pay even lip service to IM's obligations under Section O, which you raise in your last paragraph. As a practical matter, a Section O Notice could not be sent until after the 'cure' period had expired.

After the suit was filed, you persisted in confounding the process by writing your May 17, 2005 letter telling Mr. Neebling (and I assume Systrans) that he has until the close of business today, May 18, 2005 to assure you that he will not breach what you characterize as a


**PATTON BOGGS** LLP
ATTORNEYS AT LAW

2550 M Street, NW
Washington, DC 20037-1350
202 457-6000

Facsimile 202 457-6315
www.pattonboggs.com

Garry B. Watzke, Esq.
May 18, 2005
Page 2

confidentiality provision and will not contact your customers directly. I'm unsure why you would sue someone on May 13 and then threaten them with IM (tak(ing) all measures necessary to protect all of its rights" in a letter dated May 17, 2005.

Your 'notice' of May 2 was rescinded and/or otherwise rendered moot by any one of IM's three actions cited above.

In your capacity as IM's general counsel, please be advised that you are on Notice pursuant to Section H.1.B. and have otherwise been provided herewith an intention to file a Notice of Request for Resolution of Dispute that IM is in breach of the aforementioned Contract by its refusal to pay moneys owed to Systrans thereunder in the amount of $49,000.00 -- and that IM has until June 17 to cure this breach. In the event that payment is not forthcoming, invoking Section O of the Contract, Systrans will then publish a Notice of Request for Resolution of Dispute and within ten days thereof, you and Mr. Carr will meet.

Note: in response to your May 17 letter described above, be advised that at this time Systrans, either through Mr. Neebling or any other entity or individual, has no intention of breaching the confidentiality provisions of the Contract or contacting customers directly. You have already, on two occasions, advised that IM will pay the vendors involved in this dispute.

Very truly yours,

Read K. McCaffrey

cc: Ira K. Gross, Esq.
    Sullivan & Worcester LLP

3866072v1

Washington DC | Northern Virginia | Dallas | Denver | Anchorage | Doha, Qatar