# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| IRON MOUNTAIN INFORMATION MANAGEMENT INC. ) | |
| Plaintiff ) | |
| v. ) | |
| SYSTRANS FREIGHT SYSTEMS, INC. ) | |
| Defendant, and ) | |
| SYSTRANS FREIGHT SYSTEMS, INC. ) | |
| Counter-Plaintiff, ) | |
| v. ) | CIVIL ACTION NO. 05-109999-MLW |
| IRON MOUNTAIN INFORMATION MANAGEMENTM INC. ) | |
| Counter-Defendant. ) | |

## DEFENDANT AND COUNTER-PLAINTIFF'S OPPOSITION TO PLAINTIFF AND COUNTER-DEFENDANT'S MOTION TO DISMISS COUNTERCLAIMS

Defendant and Counter-Plaintiff Systrans Freight Systems, Inc. ("Systrans") by its attorney Read McCaffrey and Patton Boggs, LLP, herewith Opposes Iron Mountain Information Management Inc.'s ( Iron Mountain's) Motion to Dismiss Systrans Counterclaims and states:

## PRELIMINARY STATEMENT

Iron Mountain, through its counsel, in their Memorandum of Law filed herein on July 14, 2005, characterizes the Counterclaims filed by Systrans as ". . . a mishmash of disjointed claims

1

. . ." meaning, literally, a heterogeneous mixture of diverse ingredients. As well settled in Rule 8 (e)(2) of the Federal Rules of Civil Procedure, "A party may state as many separate claims or defenses as the party has regardless of consistency and whether based on legal, equitable or maritime grounds." While the intent was clearly pejorative, perhaps Iron Mountain's choice of the word "mishmash" was not so far off the mark.

Systrans' counterclaims are simple and straightforward alleging clearly and concisely that: 1) Iron Mountain entered into a contract promising to engage Systrans for courier logistics services and pay Systrans $ 45 Million per year – and that the arrangement would continue for five years and 2) that Iron Mountain misrepresented to Systrans how Iron Mountain would compensate Systrans for Systrans' cooperation in Iron Mountain's law suit against a former competitor which misrepresentations were relied upon by Systrans to its detriment.

The Counterclaim sounds in two counts each incorporating a series of allegations which are plain and simple facts. By way of example, paragraph 21 of the Counterclaim states:

> On March 26, 2002, Carr and Neebling met with Iron Mountain's Chairman and CEO (Reece), CFO (Kenny), and General Counsel (Watzke) at Iron Mountain's corporate headquarters in Boston, Massachusetts. Acting as an agent of Iron Mountain and with such authority, Reese offered $5 million to Carr to use to buy out Pierce's share of Logisteq. Also, at this meeting Reese further promised that Iron Mountain would hire Carr as a transportation consultant and promised Neebling to provide $25 million in courier business to Systrans. During that same conversation, Kenny revised the amount of courier business Iron Mountain would provide to Systrans. Kenny stated, in the presence of Reese and Watzke, that revenues of more than $45 Million would be paid to Systrans each year for a period of five years in return for the cooperation of Carr and Neebling (Systrans) as described above.

The thrust of Iron Mountain's arguments for dismissal of the contract claim, while without merit, are also fairly straightforward: 1) that the contract claim should be dismissed because it cannot be performed within one year and therefore would only be enforceable if

2

3881267v1

reduced to a writing and 2) there is a 'writing' (without an integration clause) which supercedes any oral negotiations regarding courier logistics services. Iron Mountain fails to recognize that: a) under New Jersey law, performance within one year is no longer a part of the Statutes of Frauds. Also, the oral contract for $ 45 Million in revenues each year obviously was designed for and clearly capable of performance within one year and b) the writing to which Iron Mountain makes reference is obviously not a vehicle for courier logistics services which would produce $45 Million in revenues during the first year.

Likewise, Iron Mountain's arguments for dismissal of the negligent misrepresentation claim are clear and simple – and also without merit – 1) that the alleged misrepresentations are so vague that reliance thereon would not be justified (see paragraph 21 above and the balance of the factual allegations which cannot seriously be described as 'vague') and 2) that the alleged misrepresentations are "promissory and forward looking" and cannot therefore support such a claim, (clearly not a fair and accurate statement of Massachusetts law as would be applied to these facts as more fully set forth in the accompanying memorandum).

Iron Mountain, while in the midst of discussions with Systrans' principal regarding an amicable resolution of their differences, without notice or warning, filed the instant action which has drawn, as counterclaims, the true measure of the commercial fabrications and deceit employed by Iron Mountain as it unilaterally benefited from the performance by Systrans of its contractual obligations in fully cooperating with Iron Mountain in its litigation against Pierce.

**ARGUMENT**

**Standard of Review**

"[T]he standard [courts] utilize when a complaint is challenged pursuant to Fed.R.Civ.P. 12(b)(6), requires that [the court] look only to the allegations of the complaint and, if under any theory they are sufficient to state a cause of action in accordance with law, a motion to dismiss the

3

complaint must be denied." *Knight v Mills*, 836 F.2d 659, 664 (1st Cir. 1987) (citing *Melo-Tone Vending Inc. v. United States*, 666 F.2d 687, 688 (1st Cir. 1981)). "A motion to dismiss pursuant to Rule 12(b)(6) may be granted only if, accepting all well pleaded allegations in the complaint as true, and viewing them in the light most favorable to [the] plaintiff, [the] plaintiff is not entitled to relief. The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Semerenko v. Cendant Corp.*, 223 F.3d 165 (3d Cir. 2000). Presented with this limited scope of review and making all reasonable inferences in favor of Systrans, the counterclaim sufficiently states causes of action in accordance with the controlling and applicable law.

Instead of addressing the adequacy of Systrans' pleading in a light most favorable to Systrans, Iron Mountain has prematurely asked the Court to embark on a factual journey through the contours of the parties' negotiations. All of Iron Mountain's arguments impermissibly require the Court to reach factual conclusions in order to sustain its motion. *See Mercado v. Ritz-Carlton San Juan Hotel, Spa & Casino*, 410 F.3d 41, 48 n9 (1st Cir. 2005)(observing that where factual issues remain "[j]udgment of dismissal, however framed, was therefore premature"); *Pearson v. Town of Rutland*, No. Civ. A. 01-40164, 2002 WL 32759592 *10 (D. Mass. Sept. 10, 2002) ("Such factual questions underscore the inappropriateness of deciding this issue on a motion to dismiss."). The issues raised by Iron Mountain cannot be ruled on before discovery and instead are more properly dealt with later in motions for summary judgment motions.

**The Law of New Jersey Controls or There Is a Conflict of Law Issue Which Precludes Dismissal**

As conceded in the Motion to Dismiss, the written contract explicitly provides that it "shall be governed by the laws of New Jersey." Motion to Dismiss, p. 4 n.3. However, Iron

Mountain's contention that Massachusetts law applies to these proceedings is both disingenuous and misleading. The contractual provision in the referenced written contract clearly and unequivocally compels this Court to apply New Jersey law and, Iron Mountain's erroneous assertion notwithstanding, Massachusetts's courts require the same. The law is clear on this point: "Absent serious conflict with public policy, Massachusetts courts will respect a contractual choice of law provision." *Vision Graphics, Inc. v. E.I. DuPont De Nemours & Co.*, 41 F. Supp. 2d 93, 97 (D. Mass. 1999) (citing *Roadmaster Indus. Inc. v. Columbia Mfg. Co.*, 893 F. Supp. 1162, 1173 (D. Mass. 1995)).

Moreover, both New Jersey and Massachusetts law recognize that two contracts covering the same subject matter and the same transaction are appropriately read together. *See New Jersey Metromall Urban Renewal, Inc. v. City of Elizabeth*, 22 N.J. Tax 276 (citing *Wellmore Builders, Inc. v. Wannier*, 49 N.J. Super. 456, 140 A.2d 422 (App. Div. 1958) and *Van Orman v. American Ins. Co.*, 680 F.2d 301, 306 (3d Cir. 1982)); *See Chelsea Indus., Inc. v. Florence,* 358 Mass. 50, 55-56, 260 N.E.2d 732 (1970) (if part of "same transaction," separate contracts may be read together as integrated agreement); *see also Gilmore v. Century Bank & Trust Co., 20 Mass.App.Ct. 49, 50, 477 N.E.2d 1069, 1073 (1985)* (whether two instruments derive from "same transaction" is question of fact for court, to be determined by "such factors as simultaneity of execution, identity of subject matter and parties, cross referencing, and interdependency of provisions"). Accordingly, in properly reading the relevant two agreements as covering one transaction, New Jersey law arguably applies to this dispute in its entirety.

In addition, Iron Mountain's assertion that there is no conflict between New Jersey and Massachusetts law is simply wrong. Therefore, the case relied on by Iron Mountain to stand for the proposition that this Court should apply Massachusetts law in the absence of a conflict is

inapposite. In fact, the existence of this conflict weighs against dismissal because this Court must make all reasonable inferences in favor of Systrans.

**The Oral Agreement Is Not Barred By The Statute of Frauds Under New Jersey Law**

Iron Mountain claims that the differences between Massachusetts and New Jersey law are a "false conflict" and urges this Court to ignore New Jersey law in favor of applying the law of its forum state. However, Iron Mountain fails to advise this Court that there is in fact a clear and distinct difference between New Jersey and Massachusetts contract law. New Jersey no longer employs as part of its Statute of Frauds the rule that a contract to be performed beyond one year must be in writing. This one-year rule was deleted from the New Jersey Statute of Frauds in 1995. *See* N.J.S.A. 25:1-5 (deleting the one year rule by amendment, P.L. 1995 C. 360); *see also Graziano v. Grant*, 741 A.2d 156 (N.J. Sup. Ct. 1999) (recognizing the amended statute deleted the one-year rule). However, the 'one-year rule' remains an element of Massachusetts' Statute of Frauds. *See* M.G.L. c. 259, §1.

Thus, Iron Mountain's contention that Systrans' breach of contract claim is clearly barred by the applicable statute of frauds is without merit. Again, at a minimum, the issue of the applicable law presents a conflict that is inappropriately decided at this time.

**The Oral Agreement is Not Barred by the Statute of Frauds Under Massachusetts Law**

As previously stated, the terms of the oral contract which Systrans contends was entered into by the parties requires the provision by Iron Mountain of sufficient courier logistics services work to Systrans to yield commercial revenues of $45 million per year. Clearly the agreement as portrayed by Systrans would be one which would be capable of being performed within one year. Assuming, *arguendo,* that Massachusetts law would apply to the enforceability of the oral contract alleged by Systrans to be binding upon Iron Mountain, at the very least, a question of

6

whether or not said contract would be capable of performance within one year would be a question of fact. At this stage of the proceedings, as previously set forth in Systrans' argument concerning 'Standard of Review', the allegations of the complaint must be accepted as true and all reasonable inferences must be drawn in a light most favorable to the plaintiffs. In correctly applying this standard it is plain that Systrans' averments meet the liberal notice requirements of Rule 8(a)(2). "The 'short and plain statement of facts' prescribed in Rule 8(a) has been interpreted to require only 'that the plaintiffs give the defendant[s] fair notice of what the plaintiff[s'] claim is and the ground upon which it rests." *Cash Energy, Inc. v. Weiner*, 768 F. Supp. 892, 897 (D. Mass. 1991) (citing *Conley v. Gibson*, 355 U.S. 41 (1957) and *Ballou v. General Elec.*, 393 F.2d 398, 399 (1st Cir. 1968)). *See also* Fed. R. Civ. P. 8.

**The Written Contract Does Not Supercede the Oral Agreement**

Iron Mountain argues that the written contract supercedes the oral agreement. Again, Iron Mountain's argument is unavailing. A recent case before the United States District Court for the District of New Jersey is particularly instructive in this case. *See Travelodge Hotels, Inc. v. Honeysuckle Enterprises, Inc.*, 357 F. Supp. 2d 788 (D.N.J. 2005). In *Travelodge*, the defendants instituted counterclaims against plaintiff Travelodge asserting among other counts a breach of contract claim. Specifically, defendants had entered into a franchise agreement with Travelodge induced by promises of Travelodge's representatives that they would be booked into the central reservation system which would provide at least 15 percent of its reservations. *Id.* at 790-91. When the reservations system failed to provide plaintiffs with the promised reservations, plaintiffs claimed Travelodge had breached its agreement ***even though it was recognized by the parties that the promise of fifteen percent had not been included in the final written agreement***. *Id.* at 800 n. 10. The court denied Travelodge's motion for summary

7

judgment on the breach of contract claim noting that a fact-finder could determine that Travelodge had breached an implied term of the contract. *Id.* "There is a dispute as to whether or not Plaintiff breached its obligation to have Defendants 'participate' in the reservation system, and its implied covenant to perform on this term in good faith." *Id.* In addition, the court specifically noted that a fact-finder could reasonably conclude that the reservations system was ostensibly in Travelodge's control. *Id.*

The case at hand presents almost identical circumstances serving as the basis for Systrans' breach of contract claim. As with the *Travelodge* defendants, Systrans was induced to enter the contract with specific promises of a certain volume of business that was within the exclusive control of Iron Mountain. In turn, Iron Mountain, mirroring the conduct of Travelodge, simply failed to act in good faith by providing the promised amount of business and in doing so breached its obligations under the agreement. Accordingly, Systrans has adequately pleaded a cause of action for breach of contract as recognized by New Jersey courts. *See* Fed. R. Civ. P. 8. *See also Cash Energy, Inc.*, 768 F. Supp. at 897 ("The 'short and plain statement of facts' prescribed in Rule 8(a) has been interpreted to require only 'that the plaintiffs give the defendant[s] fair notice of what the plaintiff['s'] claim is and the ground upon which it rests.").

Even assuming, *arguendo*, that Iron Mountain's promise of $45 million dollars of shipping business each year for five years does not constitute an implied term, the written contract does not supersede the prior oral promises. As again conceded in the Motion to Dismiss, the Contract does not contain an integration clause or any such language discharging prior agreements. More importantly, the two agreements involve the same subject matter and are wholly consistent with each other. As such, under established New Jersey law, the two agreements should be read together.

8

3881267v1

> It is now settled that two or more writings which are all parts of
> one transaction relating to the same subject matter are to be read
> and interpreted as one instrument, whether or not they refer to each
> other. *Lawrence v. Tandy & Allen, Inc.*, 14 N.J. 1, 6, 100 A.2d 891
> (1953)…. The instruments need not be executed on the same day
> nor each contain a separate mention of consideration.

*New Jersey Metromall Urban Renewal, Inc. v. City of Elizabeth*, 22 N.J. Tax 276 (Sup. Ct. 2003)

(citing *Wellmore Builders, Inc. v. Wannier*, 49 N.J. Super. 456, 140 A.2d 422 (App. Div. 1958)

and *Van Orman v. American Ins. Co.*, 680 F.2d 301, 306 (3d Cir. 1982)); *see also Chelsea*

*Indus., Inc. v. Florence,* 358 Mass. 50, 55-56, 260 N.E.2d 732 (1970); *Gilmore v. Century Bank*

*& Trust Co.,* 20 Mass.App.Ct. 49, 50, 477 N.E.2d 1069, 1073 (1985).

Similarly, in *Rosenberg v. D. Kaltman & Co.*, the court addressed a situation where a

party had entered into a restrictive covenant with an expansive geographic scope and then later

upon changing positions entered in to another contract containing a more narrow restrictive

covenant. 101 A.2d 94 (N.J. Super. Ct. 1953). The court held that the latter agreement did not

discharge the obligations under the prior agreement because the two covenants could have a

concurrent existence. Likewise, in the present case, the two agreements are not inconsistent and

therefore the latter written contract does not discharge the prior obligations.

Thus, under both New Jersey and Massachusetts law the motion to dismiss the breach of

contract claim should be denied.

## Systrans Has Adequately Pleaded Negligent Misrepresentation

Iron Mountain appropriately describes the elements of negligent misrepresentation yet

fails to effectively demonstrate how Systrans has not adequately pleaded any one of them.

Specifically, Iron Mountain claims that Systrans' reliance was unreasonable and unjustified

because the oral agreement lacked sufficient specificity. Reference is made to the previously

3881267v1

quoted paragraph 21 from the Counterclaim as an example of the clarity of the factual contentions.

Turning again to the *Travelodge* case, Iron Mountain's argument cannot stand. In that case, the court denied plaintiff's motion for summary judgment on the negligent misrepresentation count holding that the promises of a 15 percent volume of business were sufficiently pleaded to state a claim of negligent misrepresentation. 357 F. Supp. 2d at 799. More importantly, the court specifically stated that the claims sounding in fraud presented issues of fact and credibility that were properly left for the ultimate fact-finder. *Id. See also Lithuanian Commerce Corp. v. Sara Lee Hosiery*, 219 F. Supp.2d 600 (D.N.J. 2002) ("The question of whether this reliance was 'reasonable' is a question of fact for the jury."). Iron Mountain's argument cannot be sustained without prematurely reaching factual conclusions, something that is not permitted at this stage in the proceedings. *See Mercado v. Ritz-Carlton San Juan Hotel, Spa & Casino*, 410 F.3d 41, 48 n9 (1st Cir. 2005)(observing that where factual issues remain "[j]udgment of dismissal, however framed, was therefore premature"); *Pearson v. Town of Rutland*, No. Civ. A. 01-40164, 2002 WL 32759592 *10 (D. Mass. Sept. 10, 2002) ("Such factual questions underscore the inappropriateness of deciding this issue on a motion to dismiss."). Accordingly, the prior oral agreement is sufficiently specific to serve as the basis for a claim of negligent misrepresentation and the issue of reasonableness of reliance is not appropriately decided on a motion to dismiss.[1] *See* Fed. R. Civ. P. 8; *see also Cash Energy, Inc.*, 768 F. Supp. at 897 ("The 'short and plain statement of facts' prescribed in Rule 8(a) has been

---

[1] Iron Mountain's own motion reveals the extent to which factual disputes pervade this litigation. In that document they refer to Systrans as both as a company that "uses web-based technology to coordinate and manage transportation" as well as a company that was to provide "courier services" to Iron Mountain. *Compare* Motion to Dismiss at p. 2 *with* p. 5. It is apparent from Iron Mountain's own confused pleadings that the entire scope of Systrans' role in the contract can only be learned after discovery. Certainly, such conclusions cannot be reached at this stage of the pleadings.

10

3881267v1

interpreted to require only 'that the plaintiffs give the defendant[s] fair notice of what the plaintiff[s'] claim is and the ground upon which it rests.'").

Iron Mountain next attempts to attack Systrans' negligent misrepresentation claim by arguing that the prior oral promise was promissory and forward-looking in nature and therefore cannot serve as the basis for an action based in fraud. Iron Mountain's argument is equally unavailing under both New Jersey and Massachusetts law. The *Travelodge* case is again instructive. "Although a promise to do something in the future will not normally suffice ... [w]here a promise is given and the promisor knows at the time of promising that he has no intention of fulfilling it, the promise will constitute a misstatement of present fact and may support an allegation of fraud." *Id.* at 987 (internal quotation marks omitted). Similar to that case, the forward-looking promise of a specific volume of business is the appropriate basis for a claim sounding in fraud where there is an issue with respect to a party's intent at the time it made that representation. *See also Van Dam Egg Co. v. Allendale Farms, Inc.*, 489 A.2d 1209 (N.J. App. Div. 1985) ("A promise to pay money in the future is fraudulent if there is no present intent ever to do so."); *Bolen v. Paragon Plastics, Inc.* 754 F. Supp. 221 (D. Mass. 1990) ("There is an important exception to this rule, however, if at the time the defendant made the statement, he or she did not intend to carry out that promise.").

In addition, the fact that the nature of the promise was such that it was within the exclusive knowledge and control of Iron Mountain also removes it from the purview of the general rule.

> Statements as to future or contingent events, as to expectations and probabilities, or as to what will be or is intended to be done in the future, do not constitute misrepresentations even though they turn out to be false, at least where the parties have equal means of knowledge, (citations omitted) or the subject is equally open to the

11

> investigation of both, and an examination has not been fraudulently
> prevented.

*Chatlos Systems, Inc. v. National Cash Register Corp.*, 479 F. Supp. 738, 748-49 (D.N.J. 1979)

(citations omitted).

Massachusetts courts echo the established law in New Jersey. "Although as a general rule representations as to future events are not actionable, an exception has been recognized 'where the parties to the transaction are not on equal footing but where one has or is in a position where he should have superior knowledge concerning the matters to which the misrepresentations relate.'" *Cellucci v. Sun Oil Co.*, 320 N.E.2d 919 (Mass. Ct. App. 1974), *aff'd* 331 N.E.2d 813 (1975). In *Cellucci*, the plaintiff sued defendant Sunoco seeking specific performance of a contract for the sale of real estate by the plaintiff. After the plaintiff seller had agreed to sell the real estate to Sunoco, a Sunoco representative told the seller the deal was "all set" and that acceptance of the offer at Sunoco's offices would be a mere formality. The plaintiff sued for specific performance and prevailed with the court noting that to the extent that the representation was related to future events those events were within the exclusive control of Sunoco.

> Furthermore, a prediction that Sunoco will sign a contract is not
> like a prediction as to the weather. It lies within the entire and
> exclusive control of Sunoco. Representations regarding the
> internal processes of Sunoco and the likelihood of its acceptance
> did not exceed any apparent limitations of [the agent's] authority.
> Sunoco is liable for the fraudulent representations of [its agent] in
> doing the business which Sunoco entrusted to him.

*Id.* at 730. Although the *Cellucci* case involved causes of action for breach of contract and estoppel, the court's holding applies equally to an action for deceit or fraud. *Liberty Leather Corp. v. Callum*, 653 F.2d 694 (1st Cir. 1981).

12

Following *Cellucci*, this Court has repeatedly found representations actionable where the representing party has superior knowledge concerning the matters to which the representations relate. For example, in *Masso v. UPS*, the court found that a cause of action existed for negligent misrepresentation where UPS represented to an employee that he would not be terminated for installing copyrighted software on the home computers of UPS executives but then was subsequently fired. 884 F. Supp. 610 (D. Mass. 1995). "Similar to *Cellucci*, this case involves a business transaction with the knowledge regarding Masso's continued employment at UPS presumably within the control of Masso's direct superiors." *Id.* at 613.

Likewise, in *Della Croce v. General Elec. Co.*, the court found that certain statements about an employee's advancement potential within the company were actionable on a theory of fraud. Civ. A. No. 83-238-G, 1988 WL 6582 (D. Mass. Jan. 7, 1988).

> The representations at issue in this case were made by Milley in his capacity as manager of the Engineering Support Division, in the context of encouraging the plaintiff to accept a job under his supervision which he himself had created. Milley was certainly better able than the plaintiff to evaluate the potential benefits of the analyst position, and the plaintiff was thus entitled to rely on his representations. Moreover, Milley was in a position to exercise considerable control over the future conditions of the plaintiff's employment as an analyst. His statements concerning that job are thus actionable if he knowingly misrepresented either the potential benefits of the job or his own intention to provide them, and the plaintiff relied on those representations to her detriment.

*Id.* at *2.

In the present case, Iron Mountain's representations to provide Systrans with a specific volume of business clearly involved matters which were exclusively within the control of Iron Mountain. Indeed, that the representations were made to Systrans by the CEO and CFO of this international, multi-billion dollar corporation only further illustrates that the promise was being

13

made by the highest levels of the company. Accordingly, to the extent that the representations were promissory in nature they fall within the well-recognized exceptions under both Massachusetts and New Jersey law and Iron Mountain's motion to dismiss the counterclaims for that basis should be denied.

## CONCLUSION

Iron Mountain's Motion to Dismiss Systrans' Counterclaims is, at best, premature. Contentions aimed at adequacy of pleadings and/or factual disputes are not the province of a Rule 12 Motion. Whether or not Systrans' averments regarding misrepresentations are too vague to be relied on – whether or not New Jersey law will apply to the oral contract breached by Iron Mountain – and whether or not the parties had a meeting of the minds regarding the referenced written contract somehow "superceded" the oral contract are, for example, issues which must await discovery and probably trial. For the foregoing reasons set forth in Systrans' Opposition, Systrans respectfully requests that this Court DENY Iron Mountain's Motion to Dismiss the Counterclaims.

July 28, 2005

Respectfully submitted,

By his attorneys,

Read K. McCaffrey (*pro hac vice*)
PATTON BOGGS, LLP
2550 M Street, NW
Washington, DC 20005
(202) 457-5243

14

3881267v1